We're ready to hear argument in the United States v. Blue. Ms. Merchandani? Yes. Did I get it right? Yes. All right. Thank you. Good morning, Your Honors. I'm Sutton Merchandani. I'm here for the Federal Public Defender's Office on behalf of Daniel Blue, the appellant. He is here because the government presented insufficient evidence to support his convictions on counsel's behalf. This was a very, very close call in the district court below. I think the record reflects that Judge Hollander struggled over this issue and... Struggled over which issue? Well, several. Well, both actually. I think it's interesting. The connection... Good faith exception decision or the decision in the first instance? I'm sorry, what was the question? I mean, tell me what decision you're saying that he struggled with. Oh, I'm sorry. The nexus between Daniel Blue and the 100 grams of heroin found in the footstool in the female bedroom of the Rosecrantz apartment. Yes, I should have mentioned, I'm going to focus on the sufficiency issue. Oh, okay. Yes, sorry. I got you. And if the court has questions about the motion for a new trial, I'd be happy to answer any questions, but I was prepared to... Do you want us to get to a motion for a new trial? No, I'd prefer if you didn't. But the... So the... Sounds like you're kind of understanding that maybe you just need to go to that, though, on the new trial for the sufficiency, is what you're telling us. Since you're going to focus on sufficiency. I don't think you need to reach the new trial issue. We originally had briefed it, and we had briefed the GPS issue, which no longer is before this court, and the sufficiency argument. And I think standing alone, the sufficiency argument could carry the day. But I think the government... You're just saying we should reverse altogether? Yes. So if we found that the evidence is insufficient as a matter of law, that's the end of it? You need... Yes, you don't need to reach the motion for a new trial. If you find it's insufficient... I mean, if you find it was sufficient, then I think you do need to go to the motion for a new trial, and in that case, they should go back, because Sgt. G. Lamas was proven to be an incredible witness. But just to go back to the sufficiency issue, the big issue was nexus. Was there a nexus? Was there evidence of a nexus between Mr. Blue and the 100 grams of heroin found in the footstool of the female's bedroom in the Rosecrans apartment? The only two factors establishing nexus was one brief visit to the building, not to the apartment, to the building itself, and his possession in his pocket of a key to the apartment. Well, we don't know. The evidence doesn't show whether he went into the apartment or not. We just don't know. It doesn't. To the building, right. One visit to the building and a key in his pocket. There was no evidence that he lived there, because he didn't. There was no evidence that he even knew either of the occupants. Well, he could have lived there. We just don't know. There was nothing there with his name on it. There were no clothes belonging to him. His fingerprints weren't found in the apartment. We don't know anything. I mean, that's the problem is basically it's a complete speculation. And what the jury was asked to do was to speculate that because Mr. Blue is a suspected drug dealer and visited this apartment, visited this building on this one day and had a key, that anything in that apartment was under his, was in his possession. But there was no evidence to show dominion or control. Yes, Judge Hamilton. I want to ask you, is there any evidence in this record that ever put Mr. Blue in that apartment? No. None. Even though he had a key, there's nothing in the record that ever put him in the apartment? Nothing. There's evidence that put him in the building. It put him entering the building number seven and coming out, but nothing tying him to that apartment. All right. Thank you. So basically what you have is, I mean, really the only true piece of evidence that connects into the apartment is the key. We don't know if the key was given to him by Mr. Cooper. We don't know if he knew Mr. Cooper or Miss Elliot, the two residents. We have nothing. There was no counter surveillance. I mean, just to add to the insufficiency of the evidence that he did not act suspiciously, coming or going, even from the building. He didn't drive in a way that was evasive or doing counter surveillance tactics, even though he was being followed by three officers in separate cars. The heroin, the bag in which the heroin was found in the footstool was checked for fingerprints. There was nothing on it linked to him. There was nothing tying the heroin or the packaging to the suspected drug sale that had happened two weeks earlier. There was nothing to show that they were at all. I mean, I think the government made that argument that they were, well, it was heroin. Obviously it was heroin, but we're talking about Baltimore where, you know, unless you can show something connecting it, one, you know, package of heroin cannot necessarily be connected to another one just because of what we have here. I don't want to recite the briefs, but there's multiple, many cases that were discussed, Bates, Brown, Cruz, and Henderson that I think are strikingly, well, I think they're not similar. What I think is what's striking about them is that they have far more evidence, far more evidence than was presented here. And even in those cases, the evidence was insufficient. In Bates, there was not only a key, but the person was seen entering and leaving the actual apartment and was seen selling drugs across the street within a day of the arrest. In Brown, the person lived in the house, but contraband was found in other bedrooms, not hers. She had a prior drug conviction and she said that she had lived there and she was seen entering the house. In Cruz, which was very similar to this case, there was some connection to a controlled buy, a car that was hidden under plywood, which is kind of suspicious. The defendants entered, seemed to enter the house, but the key was not seen. Their phone call was linked to the informant who had made the call, and one of the defendants admitted that he sometimes stayed at the house. But there, the Eighth Circuit said even that wasn't enough. And finally, Henderson, which was a key to a motel room in the pocket of the man who was present when the search came. The motel room was his baby mother's room, and items of his were there, and he obviously had a relationship to the woman. But the fact that nothing of his was actually linked to where the drugs were found under the bathroom sink made the Fifth Circuit decide that the evidence was insufficient. Unless the court has any questions, I'm not going to belabor the point. I just want to say in closing that if we accept the government's argument that just a single visit to the building and the key in the pocket is enough, to say that a suspected drug dealer has dominion and control over every location he may have been at or any place to which he had access, which the key really only shows access, not dominion and control, that basically ignores the requirement of nexus evidence. And it also sets the bar incredibly, incredibly low for sufficiency. And I just want to quote what the government said during the Rule 29 motion about inference versus speculation. You can make inferences from the evidence, but you can't speculate when there's no evidence. And I think what the government was asking the court to do was to allow the jury to just fill its holes in its case with speculation. The court said drug dealers, I'm sorry, the government said drug dealer whose apartments of family, family members, friends, relatives, what have you. The judge, we don't know whose apartment this was from the evidence. The government says that's correct. Judge said we don't know what the defendant's relationship was. Government said, and again, that supports the jury's finding of conspiracy because the jury could reasonably infer, well, maybe that heroin belonged to Mr. Cooper. Perhaps the heroin belonged to Ms. Elliot. Perhaps the heroin belonged to Cooper, Elliot, and Blue. Is it reasonable for them to infer that? Absolutely. Because possessions can be joint constructive. It's reasonable for them to draw that inference. Because if the rule were that you need a direct connection or mail or clothing, then it would make law enforcement's life very difficult. I do not think that's the standard that we need to apply to criminal convictions. So unless there's any more questions. Thank you very much. You have some rebuttal time. Mr. Sipple. Yes, good morning. John Sipple, Assistant United States Attorney for the District of Maryland. Viewing the facts in a light most favorable to the government in this case, substantial evidence does support the jury's verdict in this case. As the court has been briefed fully on this issue, there's a lot more facts that the defense has glossed over that supports the jury's finding in this case. I want to start, there's actually two events in this case. A drug deal that occurred in June of 2011, and then the meeting and arrest of Blue in July of 2011. I want to turn first to that July 13, 2011 meeting. Blue admitted that he was at Lake Montebello meeting with another individual named Jamar Holt to discuss a drug transaction. There's your conspiracy right there. They discuss a drug transaction. Before that meeting with Mr. Holt on July 13th, Blue was observed leaving Baltimore City. Was the indictment in this case a conspiracy for the exact amount of heroin that was in the apartment? It was, Your Honor. It was not just generic heroin? No, it was for the amount, because there was two incidents, Your Honor. There was conspiracy. The conspiracy was for 100 plus grams. Count two was for the first, the June 2011 incident, and then count three related to possession with intent to distribute on the July 13th incident, which was the heroin that was recovered from the Rosecrans Place apartment. But in order to be convicted of conspiracy, he had to have, as I understand the indictment, he would have had to have been proven to have conspired to distribute that particular quantity of heroin. That's correct. 100 grams or more, Your Honor. So it would include the heroin in the apartment as well as, it could also include the 50 grams of heroin that was recovered on June, I believe it was 29th, 2011. Even though the jury acquitted on that second count, the jury's still free to consider all facts that are presented at trial. They're not walled off if they acquit on that count. If we were to determine the evidence was insufficient as to the 100 and some grams that were in the pit locker or footstool or whatever it was, then you couldn't be convicted of the conspiracy count because you'd be short enough heroin. Your Honor, I believe you could be convicted of the conspiracy count but to a lesser amount of narcotics because we don't know if the jury included the 50 grams from the June 29th arrest or not. So you could still, I believe you could still, and I think we've referenced that in a footnote where the court would be permitted to still find him guilty of conspiracy but to a lesser included offense. And the Court of Appeals could do that? Excuse me? The Court of Appeals could do that? Your Honor, I'm not sure if the Court of Appeals can do that. I mean, I think if you reversed, I'm not sure the lay of the land, how it would proceed in terms of would it go back to the district court to re-sentence on that issue? I'm really not sure, Your Honor. But turning back to the evidence that leads us to the apartment, Your Honor, Your Honors, I'm sorry. He leaves Baltimore City on June 13th, drives right past Lake Montebello. The officers follow him past Lake Montebello. He leaves the city, goes out to Baltimore County to the Rosecrans Place apartment. As he exits the vehicle, goes into the apartment complex, comes out of the apartment complex with a container, what would appear to be a Tupperware container in his hand. Gets back in his vehicle, drives back to Lake Montebello, meets with Mr. Holt. They get into Holt's vehicle, drive around Lake Montebello. Blue then leaves. The law enforcement officers testify that they believed that a drug deal happened at Lake Montebello between Blue and Holt, so they follow Holt. When they attempt to stop Holt, Holt brandishes a firearm, attempts to run over one of the officers, and they open fire, essentially, on the car. I'm not sure if it's, I believe it's in the record that he, Mr. Holt then later shows up at one of the medical facilities in Baltimore with multiple gunshot wounds. They then went and found Mr. Blue, arrested him, and he was, right as Miranda writes, he agreed to speak with officers. And this is where I think the most important part and what my opponent did not mention is this interview. What happened during that interview? Mr. Blue was specifically questioned about whether he was in Baltimore County the morning of July 13th. He said no. The officers then asked him if he was at the apartment complex at Rosecrans Place. He said no. They then questioned him about why he was at Lake Montebello that day, and he admitted, I was there to do a drug deal. They then said, well, we followed you to the Rosecrans Place apartment and saw you enter the Rosecrans Place apartment complex. He then said, I don't want to talk anymore. The jury heard all of that. They also heard that they recovered a key from his pocket, that one of those keys worked for one of the apartments in the Rosecrans Place apartment complex. They get a search warrant. They find the 100 grams of heroin. Taking those facts to— What if he had a bunch of keys to different places? And would you just have checked every one of them, and anything found in those apartments would be his, too? No, Your Honor. I don't know if they would have probable cause to search those other residences because there's no connection. But they did see Mr. Blue go into that apartment complex, so there is a connection. Did they see him going to a particular apartment? Didn't go into a particular apartment, but, Your Honor, I would say that— That goes to my question. What if he had keys to four or five apartments there? In that complex? In that complex. You could go to every one of them. I think you would— And anything you found in there, you would then say he constructively possessed it. Your Honor, given the sequence of events, if there were multiple keys to that apartment complex that he held, and he went into that apartment complex knowing that he admitted that he was talking about a drug dealer, also, Your Honor, the jury heard that on June 29th— What if it was a boarding house and you had a key just to the front door? And you had 20 rooms in that boarding house. He opened that front door. Can you join all of them? Anything you find in those 20 rooms that he has? Is the key to the front door or is the key to all the boarding houses? You only need one to get in. Once you get in, you can go into any room there. If he had the key—I think that's a different scenario, Your Honor, because I think there's— But you were touted on this key, and I want to know where we're going with this key business. If a key alone is the nexus that says you constructively—that's a concern. Don't you think that's a concern? He just got a key. I mean typically we go a little further. I mean constructive possession, we move the law in a direction to say, well, you don't actually have to have it, but you've got to show some dominion and control, and key alone, I'm trying to understand, what does that mean? It's more than a key, Your Honor.  I don't disagree with you that if they just come up on him and he found a key, that whether that would even give them probable cause to search the apartment. But, Your Honor, that's not what we have here. We have the facts that I just provided to you plus what happened on June 29th. The officers observed Blue participate in a drug deal. He provided 50 grams of heroin to Keith Townsend that was ordered by Herbert Fenner, who was a cooperating witness and testified at trial. But connect that with the apartment. I mean I understand he's a bad guy. I'm getting to that, Your Honor. You could probably go around and it's probably, depending on where the area is, you could find a number of people who you could get that. And the only thing that would differentiate him from all those other people is the fact he has a key. And so the key becomes the key, one of a kind. But again, Your Honor, the jury gets to consider the totality of the circumstances. They heard that he's a drug dealer. We don't let them go that far. I mean think about it. When you think about we want emphases and we want the jury to decide things, but I mean there is a level you get to where really you've got to be speculative and you've got to consider, wait a minute, this is not as solid as it seems. And the danger it creates for us, we're not trying to find a way for him to get out of this. We're not trying to say that he shouldn't be convicted. But the danger is, I mean this is the kind of conduct that an innocent person could simply just have a key. But Mr. Blue isn't an innocent person, Your Honor. He's not an innocent person. He's a drug dealer that was observed. But any decision we write would have implications is the question I'm saying. In terms of these particular facts for him, but it doesn't apply to anybody else sort of situation. Why don't you, if you'll answer Judge Wynn's question. And I see that Judge Hamilton has a question. Your Honor, it's more than that. He lied about even being in the apartment. He lied. And the case law tells us that it's reasonable to draw an inference if you lied about being at that apartment, his association with that apartment. It's more than just possessing a key. He lied about being there after law enforcement officers observed him go into the apartment complex. It's a reasonable inference that if he lied about ever being at that apartment complex that there is something illegal in that compartment. There's a reason why he did not want law enforcement to know that he was at that apartment. There's a reason he lied about it. I've got a question. I have a question for you. You were charged about a lot of, I mean, he was a drug dealer on numerous occasions. I don't dispute that. But was a jury ever charged on a lesser included offense with respect to a drug quantity? Your Honor, the jury, the conspiracy count was 100 grams or more. And I believe. One hundred and eight grams. That's right. That's correct. And that's all this case is about. That's correct. You want to bring up all the other drug dealings that he was involved in, but only counts one in three involved the 108 grams of heroin found in the footstool. Isn't that correct? That's correct. Well, what are all these other deals that you want to talk about? What have they got to do with this case? Well, I think, Your Honor, what it gets to is that the jury understands that he's a drug dealer and he's a heroin dealer. And he lied about being at the apartment. And he had a key to that apartment. And in that apartment was the very same drug that the jury heard that he was dealing on June 29th. He had a key. But did that in any way give him dominion and control over the 108 grams? Your Honor, coupled with. That's a question. Did that in any way give him dominion and control over the 108 grams that were found in the footstool? It does, Your Honor, when you look at these facts. He drove from Baltimore City to that apartment on July 13th, goes into the apartment complex, comes out with a container, meets. Which container was never seen again. Never seen again. We don't know what happened to it. He meets with Jamar Holt to. He admits, I was there to discuss a drug deal. He then lies to police about ever being at that apartment. And he has the key to that apartment. I think those are fair and reasonable inferences that show that he had dominion and control over something in an apartment. Otherwise, why would he lie about going to that apartment? He lied for a reason. He lied to conceal what was inside of that apartment. What else you got to say? Your Honors, again, based on the totality of the circumstances, the jury, it's easy to focus in as Judge Wynn did on the key. But it's more than just the key, Your Honors. It's more than just the key. The jury heard a sequence of events of drug dealing. And a lot of the cases that the defense cites in their brief that we distinguish in our brief deal with drug dealers who were dealing different drugs. Drug dealers who had no association or weren't observed going in and out of the apartment. This case is different. We have a drug deal that Mr. Blue participated in on June 29th, 50 grams of heroin. On July 13th, he meets with Jamar Holt. He admits, I was there to discuss a drug deal right after he went to the apartment. Later that day when he's questioned by police, he lies about being at that apartment. Lies about it. And there's only one reason why he lied. It's reasonable for a jury to infer that he lied about that apartment to protect his stash of narcotics. Thank you. Thank you very much. Ms. Marechandani, you have some rebuttal time. Of course, you're under no obligation to use it. You don't want to. Don't use it. Very, very quickly. I just want to respond to the government's focus on the lying and the concealing. Just to put out there again that the Sinclair residence was also, he also lied about being there. And it was searched. It was also not his residence. He didn't have a key. And nothing there was linked to him. So lying about your whereabouts, while it is a factor for probable cause, it is not necessarily evidence that goes to beyond a reasonable doubt for guilt. And I think that's the biggest problem here is that the government and the court actually kept citing probable cause cases in the context of the Rule 29 motion. And the court cited to Whitner to talk about how concealing your location is a suspicious activity. And, yes, it is. And it could give rise to an inference that there's a possibility that you're storing evidence there. So maybe it supported the search warrant. But we're talking about a completely different standard for Rule 29. Is it sufficient to support guilt beyond a reasonable doubt? Yes, Judge Hamilton. Let me ask you one question. I think I asked your opponent that, and he didn't respond. Was a jury ever charged on the lesser-included offense with respect to drug quantity? No, it was not. Thank you. That's it. Unless the court has any other questions. Thank you very much. We'll ask the clerk.
judges: G. Steven Agee, James A. Wynn, Jr., Clyde H. Hamilton